IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs November 15, 2005

## STATE OF TENNESSEE v. CLARENCE BUNTON

**Direct Appeal from the Criminal Court for Shelby County**
**No. 01-13603    John P. Colton, Jr., Judge**

––––––––––

**No. W2004-02866-CCA-R3-CD  - Filed December 15, 2005**

––––––––––

A Shelby County Criminal Court jury convicted the appellant, Clarence Bunton, of attempted child rape, and the trial court sentenced him as a Range II, multiple offender to twelve years in confinement.  The appellant appeals, claiming that the evidence is insufficient to support the conviction.  Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR. AND J.C. MCLIN, JJ., joined.

Garland Erguden (on appeal) and Barry Kuhn (at trial), Memphis, Tennessee, for the appellant, Clarence Bunton.

Paul G. Summers, Attorney General and Reporter; Elizabeth B. Marney, Assistant Attorney General; William L. Gibbons, District Attorney General; and Kevin Rardin and Scot Bearup, Assistant District Attorneys General, for the appellee, State of Tennessee.

**OPINION**

### I.  Factual Background

Bessie Mae Fletcher testified that the victim was her daughter and was born on September 28, 1988.  In April 2001, Fletcher lived at 3231 Given Street with her two sons, her granddaughter, and the then twelve-year-old victim.  Another daughter, April, lived in a small house behind her home.  On April 1, 2001, Fletcher and her oldest daughter, Betty Moten, were preparing to go to Hancock Fabrics.  As they were getting ready to leave, Fletcher saw the appellant, who was Moten's boyfriend, standing on Fletcher's front porch.  Fletcher did not like the appellant and told Moten, "[H]e's got to go."  The appellant started walking down the street, and Fletcher and Moten left. Fletcher left her children and granddaughter in April's care.

Fletcher and Moten were gone for about forty minutes. When they returned home, the appellant was coming out of Fletcher's house. The victim was behind the appellant and told Fletcher that the appellant had had sex with her. Fletcher followed the appellant outside and began hitting him, and the appellant got into someone's car and left. Fletcher telephoned the police, who arrived and took Fletcher and her family to the Memphis Sexual Assault Resource Center. The victim was examined at the center and left her jeans and panties there. Fletcher stated that the victim was "slow" and took special classes at school. On cross-examination, Fletcher testified that the appellant's nickname was "Coochie" and that the victim knew the appellant by his nickname. She stated that she did not like Moten's relationship with the appellant because "[h]e didn't do nothing but jump on her all the time." She stated that when she and Moten returned home from Hancock Fabrics, the victim was dressed.

The victim, who was fifteen years old at the time of trial, testified that she lived with her mother, two brothers, and a niece. A smaller house was located behind their house, and the victim's older sister, April, lived in that home. On April 1, 2001, the victim's mother and Betty Moten went to Hancock Fabrics, leaving the victim, her brothers, and her niece at home with April. The victim was outside riding her bike, and the appellant told her to come into the main house. The victim went inside, and the appellant told her to lock the back door. He then told the victim to go into the bathroom, and he pulled down her pants. The appellant laid the victim on the bed in her bedroom and told her that he was going to put his penis in her vagina. He then stated, "Wait for a minute, I got to do something." The appellant left the room and locked the front door. He returned to the bedroom and put his penis in the victim's vagina. After the incident, he told the victim not to tell her mother and gave the victim a dollar. When the victim's mother returned home, the victim immediately told her mother about the rape. The victim's mother called the police, and the police took the victim to the Memphis Sexual Assault Resource Center. The victim gave the police the one dollar bill that the appellant had given her.

On cross-examination, the victim testified that her brothers were outside during the rape and that April and her boyfriend were in the smaller house. She stated that after the appellant told her to pull down her pants, she went to April's house and told April that the appellant wanted the victim to pull down her pants. April told the victim to tell their mother when their mother returned home and did not help the victim. The victim acknowledged telling Reed Branch that the appellant digitally penetrated her. However, she said that the appellant did not put his fingers in her vagina and that she did not know why she lied to Branch. She stated that the appellant pulled her pants and panties down to her feet but did not take them off. She stated that she did not know what ejaculation and semen were but that no fluid came out of the appellant's penis.

Anita Boykins, a sexual assault nurse examiner for the Memphis Sexual Assault Resource Center, testified that she examined the victim on April 1, 2001. She collected a vaginal swab and a vaginal slide from the victim and collected the victim's underwear. The victim told Boykins that the appellant came into the victim's bedroom and pushed her onto the bed. According to the victim, the appellant told the victim to hold her legs up, and "we started doing it." Afterward, the appellant told the victim to go into the bathroom, and he left. On cross-examination, Boykins testified that the

victim told Boykins that she could not remember the appellant's name and that she did not know if the appellant ejaculated. Boykins stated that the victim's hymen was not normal but that she found no redness, bruising, or bleeding to the victim's genitalia. She stated that the victim was cooperative, quiet, and controlled and that based upon her examination of the victim, she concluded that the victim's vagina had been penetrated.

Margaret Aiken testified that she was a sexual assault nurse examiner at the Memphis Sexual Assault Resource Center. She collected a saliva specimen from the appellant.

Hyun Kim of the Memphis Police Department testified that he was the manager of evidence at the Memphis Sexual Assault Resource Center and sent the appellant's saliva sample and the victim's rape kit to the Tennessee Bureau of Investigation (TBI). The victim's panties were included in the rape kit.

Special Agent Chad Johnson of the TBI's forensic services division testified that he conducted DNA analysis on the victim's rape kit and the appellant's saliva sample. Johnson found no sperm or semen on the victim's vaginal swabs but found sperm and semen on her panties. Johnson compared the DNA profile from the panties to the DNA profile for the appellant's saliva sample and concluded that the profiles matched. He stated that the probability of someone having the same DNA profile as the appellant would exceed the current world's population. On cross-examination, Johnson testified that he did not know how long the appellant's semen had been present on the victim's underwear. Although the appellant had been charged with child rape, the jury convicted him of attempted child rape, a Class B felony.

## II. Analysis

The appellant argues that the evidence is insufficient to support the conviction, claiming that the victim's "version of events was conflicting and often improbable." In support of his argument, he notes that the victim told Anita Boykins that she could not remember the name of the man who raped her despite the fact that the victim knew the appellant as "Coochie." He also contends that the victim's "leaving both the bedroom and house in mid-assault to go out to tell two adults that a man was inside the house and wanted her to pull her pants down" is "bizarre." The State argues that the evidence is more than sufficient to support a conviction for child rape and, therefore, that the evidence is sufficient to support the conviction for attempted child rape. We conclude that the evidence is sufficient.

When an appellant challenges the sufficiency of the convicting evidence, the standard for review is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); see Tenn. R. App. P. 13(e). On appeal, the State is entitled to the strongest legitimate view of the evidence and all reasonable or legitimate inferences which may be drawn therefrom. State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions concerning the credibility of witnesses and the weight and value

to be afforded the evidence, as well as all factual issues raised by the evidence, are resolved by the jury as trier of fact. State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997). This court will not reweigh or reevaluate the evidence. Id. Because a jury conviction removes the presumption of innocence with which a defendant is initially cloaked at trial and replaces it on appeal with one of guilt, a convicted defendant has the burden of demonstrating to this court that the evidence is insufficient. State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982).

"Rape of a child is the unlawful sexual penetration of a victim by the defendant or the defendant by a victim, if such victim is less than thirteen (13) years of age." Tenn. Code Ann. § 39-13-522(a). A person commits criminal attempt when, acting with the kind of culpability otherwise required for the offense, the person

> (1) Intentionally engages in action or causes a result that would constitute an offense if the circumstances surrounding the conduct were as the person believes them to be;
>
> (2) Acts with intent to cause a result that is an element of the offense, and believes the conduct will cause the result without further conduct on the person's part; or
>
> (3) Acts with intent to complete a course of action or cause a result that would constitute the offense, under the circumstances surrounding the conduct as the person believes them to be, and the conduct constitutes a substantial step toward the commission of the offense.

Tenn. Code Ann. § 39-12-101(a).

In the instant case, the victim testified that the appellant told her to come into the house, pulled down her pants, laid her on the bed, and told her that he was going to put his penis in her vagina. The victim also stated that the appellant left the room, returned, and raped her. Forensic testing of the victim's underwear revealed that the appellant's sperm was on the victim's panties, direct evidence that the appellant had sexual contact with the victim and corroborating her testimony. We note that the victim's mother testified that the victim was "slow" and took special classes at school. While the victim stated that she went to her sister's house at some point during her encounter with the appellant and told her sister that the appellant wanted her to pull down her pants, the jury heard the victim's account and chose to convict the appellant of the lesser included offense of attempted child rape, demonstrating to us that the jury carefully considered the victim's testimony and the DNA evidence. Taken in the light most favorable to the State, we conclude that the evidence is sufficient to support the conviction.

### III. Conclusion

Upon review of the record and the parties' briefs, we affirm the judgment of the trial court.

                                             _____

                                             NORMA McGEE OGLE, JUDGE